# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7325 | **DATE** | 1/13/2004 |
| **CASE TITLE** | N.M. PATERSON & SONS, LTD. vs. M/V ETHEL E., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court denies the defendants' motion for summary judgment [29-1]. Status hearing set for 1/28/04 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JAN 14 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 37 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | JAN 14 2004 date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

N.M. PATERSON & SONS, LTD., )
a Canadian corporation, )
 )
    Plaintiff, )
 )
 ) IN ADMIRALTY
v. )
 ) 01 C 7325
M/V ETHEL E., WILLIAM C. )
SELVICK, and CURLEY'S ) Judge Ronald A. Guzmán
MARINE TOWING, )
 )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Pending is defendants *M/V Ethel E.* ("*Ethel E.*"), William C. Selvick, and Curley's Marine Towing's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) as to all claims. For the following reasons, the Court denies the motion.

JAN 1 4 2004

## FACTS

As discussed below, there are very few facts as to which the parties agree. The following, however, are the undisputed facts. Plaintiff N.M. Paterson & Sons is the owner of the *M/V Paterson* ("*Paterson*"), which is a Great Lakes bulk carrier registered in Canada. (Defs.' LR 56.1(a)(3) ¶ 1.) Defendant William C. Selvick is the owner and Defendant Curley's Marine Towing is the managing entity of the *Ethel E.* (*Id.* ¶ 3.) On October 2, 2000, the *Paterson*, which is approximately 736 feet long and 76 feet wide, delivered cargo to Acme Steel on the Calumet River. (*Id.* ¶ 4.) At 1:50 a.m. on October 7, 2000, after unloading its cargo, the

*Paterson* departed back through the Calumet River. (*Id.* ¶ 5.)

A tug, the *Ethel E.*, assisted the *Paterson* in its journey back to Lake Michigan. (*Id.* ¶ 14.) The captain of the *Paterson*, Captain Houde, told the *Ethel E.* when to pull the *Paterson* away from the dock and to try to keep the *Paterson* in the middle of the channel. (*Id.* ¶ 16.) The *Ethel E.* was to help keep the stern of the *Paterson* in the middle of the river. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 3.) One of plaintiff's expert witnesses, G.E. Leithner of Hunt, Leithner & Co., Inc., concluded that the rudder of the *Paterson* grounded on either the river bottom or on debris on the river bottom within the channel limits. (Defs.' LR 56.1(a)(3) ¶¶ 48-49.) Plaintiff's other expert, J.K. Coates of Meridian Marine Consulting Ltd., concluded that the *Paterson's* rudder and the tips of its propeller struck underwater debris from the Cronimet Dock that was located within the navigable channel. (*Id.* ¶¶ 48, 50.)

Houde has been the captain of the *Paterson* since 1999 and, prior to the grounding that is the subject of this litigation, has brought vessels into the Calumet River five or six times per year since 1997. (*Id.* ¶¶ 7-8.) Houde considers himself an expert on the conditions of the Calumet River. (*Id.* ¶ 9.) The procedure manual for the *Paterson* indicates that there must be one lookout aft and one lookout forward while the vessel is in transit in order to keep the master informed of any obstructions or hazards. (*Id.* ¶¶ 27-28.) During the tow, Dan McDonald served as lookout on the stern of the *Paterson* and was equipped with a radio to communicate with Houde. (*Id.* ¶ 37.) For reasons unknown, Houde and McDonald were out of radio contact for approximately three to four minutes. (*Id.* ¶ 41.) Wray, captain of the *Ethel E.*, was aware that the master of the *Paterson* was experiencing communication difficulties with the stern lookout. (*Id.* ¶ 13.) Wray did not know where the spotters were on board the *Paterson*. (*Id.* ¶ 27.) Wray knows the Calumet River as well as other tugboat captains. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 8.)

Wray did not know of the underwater obstruction located at or around the Cronimet Dock that is the subject of this lawsuit. (Defs.' LR 56.1(a)(3) ¶ 51.) Wray was not aware of the contours of the bottom of the Calumet River. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 28.)

## DISCUSSION

The court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When considering the evidence submitted by the parties, the court does not weigh it or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 683 (7th Cir. 1999). If a reasonable jury could find for the party opposing the motion, summary judgment may not be granted. *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995).

Initially, the party moving for summary judgment bears the burden of identifying the basis for the summary judgment motion by pointing to the parts of the record that the party believes demonstrate the lack of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmovant must then show that there is a genuine issue for trial. *Id.* at 324. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the case upon which it has the burden of proof. *Id.* at 322.

This case is governed by admiralty law and questions of negligence in maritime cases are treated as factual issues. *Folkstone Maritime, Ltd. v. CSX Corp.*, 64 F.3d 1037, 1046 (7th Cir. 1995). In order to succeed on any negligence theory, the plaintiff must establish that: (1) the defendant owed plaintiff a duty of care; (2) the defendant breached that duty; (3) and the defendant's breach was the proximate cause of plaintiff's injury. *Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267 (Ill. 1996). When a plaintiff fails to establish a genuine issue as to a material fact regarding any one of these required elements, then summary judgment must be granted in favor of the defendant. *See Montgomery v. Petty Mgmt. Corp.*, 752 N.E.2d 596, 599 (Ill. App. Ct. 2001).

In this case, the proper standard to be applied is that a tug, while neither a bailee nor an insurer, is obligated to provide reasonable care and skill "'as prudent navigators employ for the performance of similar service.'" *King Fisher Marine Serv., Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1184 (5th Cir. 1984) (quoting *Stevens v. White City*, 285 U.S. 195 (1932)). The duty of the tug boat to the tow is to use ordinary care in performing the towage. *Geertson v. United States*, 223 F.2d 68, 71 (3d Cir. 1955). A tug is bound to act and avoid, so far as reasonable care and skill can afford, dangerous points in navigation that are known or should have been known to a master in charge of the tug. *Folkstone Maritime*, 64 F.3d at 1055 (citing *In re W.H. Baldwin*, 271 F. 411, 413 (2d Cir. 1921)). Further, "[n]avigators are not to be charged with negligence unless they make a decision which nautical experience and good seamanship would condemn as unjustifiable at the time and under the circumstances shown." *Id.* (quoting *In re W.H. Baldwin*, 271 F. at 413).

When damages involve a tow or an entire flotilla, courts employ the "dominant mind" doctrine to "place liability on the tug and absolve the tow from liability." *In re TT Boat Corp.*,

Nos. CIV. A. 98-0494, 98-1109, 1999 WL 123810, at *3 (E.D. La. Mar. 3, 1999) (citing 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 12-7 (2d ed. 1994)). The "dominant mind" doctrine provides that the vessel that is liable is the vessel whose people are actually in control of the operation. *Id.* (citing *Chevron U.S.A. Inc. v. Progress Marine Inc.*, No. CIVIL ACTION 77-463, 1980 A.M.C. 1637 (E.D. La. Aug. 24, 1979), *aff'd*, 632 F.2d 893 (5th Cir. 1980)). A tug is usually considered to be the "dominant mind" because it provides the "motive power." *Id.* (citing *Marathon Pipeline Co. v. Drilling Rig Rowan/Odessa*, 527 F. Supp. 824, 834 (E.D. La. 1981)). A tug that tows the tow into a collision is presumed to be at fault, especially if that collision is with a stationary object. *Id.* (citing *Ryan Walsh Stevedoring Co., Inc. v. James Marine Serv., Inc.*, 557 F. Supp. 457, 461 (E.D. La. 1983), *aff'd*, 729 F.2d 1457 (5th Cir. 1984)). If the tug is the "dominant mind," the tug is responsible for knowledge of navigational conditions, including knowledge of channels, depth of water, obstructions, pipelines and other dangers to her tow. *Id.*

However, the presumption that the tug is the "dominant mind" is rebuttable. *Id.* (citing *Chevron*, 1980 A.M.C. 1637). If the tow breached a duty or acted in a negligent manner that contributed to the damages, the tow may be held partially or solely liable. *Id.* An arrangement that the tug is not the "dominant mind" can be made by agreement, expressed or implied from the circumstances. *Dow Chem. Co. v. Tug Thomas Allen*, 349 F. Supp. 1354, 1363 (E.D. La. 1972). If the tow is deemed to be the "dominant mind," "the tug is not liable provided the tug has obeyed the tow's orders and has not herself been guilty of negligence, either in the manner of executing the orders or by participating in an obviously dangerous maneuver." *Id.*

Many genuine issues of material fact are in dispute, including which party was the "dominant mind." The following facts, which are essential to resolving this issue, make it

5

impossible to grant the motion for summary judgment. As stated above, the "dominant mind" doctrine provides that the vessel that is liable is the vessel whose people are actually in control of the operation. *In re TT Boat Corp.*, 1999 WL 123810, at *3 (citing *Chevron*, 1980 A.M.C. 1637). The parties disagree as to who was in ultimate control: the tug or the tow. The defendants believe that the master of the *Paterson* was ultimately responsible for maneuvering his ship, with the assistance of the tugboat, and that Houde had ultimate responsibility to make sure that the *Paterson* was being operated properly. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 3.) The plaintiff claims that it was the tug *Ethel E.*'s responsibility to tow the *Paterson* out of the Calumet River and keep the stern of the *Paterson* in the middle of the River. (Pl.'s LR 56.1(b)(3)(A) ¶ 23.) Defendants argue that it was the responsibility of the *Ethel E.* to tow the *Paterson* and listen to Houde's commands and that Houde had authority to override the tugboat captain. (Def.'s LR 56.1(a)(3) ¶¶ 23, 25.) Because the parties do not agree as to whom had ultimate responsibility, it is impossible to determine which vessel was the "dominant mind," and, thus, impossible to determine the duties owed to the tow *Paterson* by the tug *Ethel E.* This is because if the tug is the "dominant mind," the *Ethel E.* is responsible for knowledge of navigational conditions, including knowledge of channels, depth of water, obstructions, pipelines and other dangers to her tow. *In re TT Boat Corp.*, 1999 WL 123810, at *3. However, if the tow is the "dominant mind," the tug will not be liable if it has followed the *Paterson*'s orders and has not been guilty of negligence. *Dow Chem.*, 349 F. Supp. at 1363. Further, the *Paterson* may be deemed to be liable if it breached a duty or acted in a negligent manner that contributed to the casualty. *In re TT Boat Corp.*, 1999 WL 123810, at *3.

The parties do not agree as to whether the tug was responsible for keeping the tow in the center of the river. The plaintiffs claim that it was the tug's job to keep the stern of the *Paterson*

in the center of the river. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 17, 20, 22-25, 36; Pl.'s LR 56.1(b)(3)(B) ¶ 3.) The defendants claim that it was the ultimate responsibility of the *Paterson's* master to keep it in the center of the river. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶¶ 3-4.)

There is also dispute over the requisite knowledge of the *Paterson's* captain and of the *Ethel E.*'s captain. As stated above, if the tug is the "dominant mind," the *Ethel E.* is responsible for knowledge of navigational conditions, including knowledge of channels, depth of water, obstructions, pipelines and other dangers to her tow. *In re TT Boat Corp.*, 1999 WL 123810, at *3. The plaintiff claims that the tug captain does not know how far from the center of the river the outside channel limits are. (Pl.'s LR 56.1(b)(3)(B) ¶ 10.) However, the defendants deny that the tug captain did not know this. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 10.) The defendants claim that it was Houde's responsibility to know the river's depth, local conditions, and changes in navigation channels. (Def.'s LR 56.1(a)(3) ¶ 11.)

The parties also disagree as to whether or not the *Paterson* was kept within the center of the river, which the plaintiff argues was required. The defendants assert that the *Ethel E.* kept the *Paterson* in the navigable channel. (Def.'s LR 56.1(a)(3) ¶ 35.) The plaintiff claims that the *Ethel E.* failed to keep the stern of the *Paterson* near to the center of the channel. (Pl.'s LR 56.1(b)(3)(B) ¶ 4.) The plaintiff states that: (1) the *Paterson* did not go out of the navigable channel, but that this was because the shallow water at the edge of the channel prevented the *Paterson* from getting out of the channel; and (2) the *Ethel E.* did not do its job, which was to keep the stern of the *Paterson* in the middle of the Calumet River. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 35-36.) Plaintiff's experts state that the grounding took place within the navigable channel. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 49-50.)

There is also dispute over the breakdown in communication between the *Paterson* and

the *Ethel E*. While the defendants claim that there was a lack of communication between the tow and tug (Def.'s LR 56.1(a)(3) ¶¶ 41-43), the plaintiff asserts that there was no lack of communication between the tow and tug (Pl.'s LR 56.1(b)(3)(A) ¶¶ 42-44). The defendants claim that it was this breakdown in communication that led to the *Paterson* getting too close to the shore of the Calumet River. (Def.'s LR 56.1(a)(3) ¶ 44.)

Because the parties cannot even agree upon the responsibilities of each party in this action, let alone whether these responsibilities were carried out, it is impossible to determine who the "dominant mind" was and whether that "dominant mind" fulfilled its obligations. The parties are in dispute over whether the tug was required to keep the tow in the center of the river and whether or not the tug captain, Wray, was required to know of conditions of the River, including the conditions of the Cronimet dock. The parties also dispute whether or not there was a breakdown in communication between the tug and the tow. Due to these existing disputes, this is not a case for summary judgment, but, rather, one for the trier of fact.

## CONCLUSION

For the reasons stated above, the Court denies the defendants' motion for summary judgment [doc. no. 29-1].

**SO ORDERED**  ENTERED: 1/13/04

HON. RONALD A. GUZMAN
United States Judge